UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| **GEOFFREY W. BANT,** ) | |
|        **Plaintiff,** ) | |
| **v.** ) | |
| ) | **Case No. 05-2132** |
| **BOARD OF TRUSTEES OF** ) | |
| **UNIVERSITY OF ILLINOIS,** ) | |
| ) | |
|        **Defendant.** ) | |

# ORDER

In June 2005, Plaintiff, Geoffrey Bant, filed a Complaint (#1) against Defendant, Board of Trustees of the University of Illinois (hereinafter "Board"). In July 2005, Plaintiff filed an Amended Complaint (#8) against the Board and Defendant Van Allen Anderson, alleging violations of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*) and the Age Discrimination in Employment Act (29 U.S.C. §§ 621-634) (hereinafter "ADEA"), and also alleging that Defendants violated Plaintiff's constitutional rights to free speech and due process. Federal jurisdiction is based on federal question pursuant to 28 U.S.C. § 1331 because Plaintiff's claims are based on federal law. The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge.

In July 2005, Defendant Board filed a Motion To Dismiss (#11). After reviewing the parties' pleadings and memoranda, this Court **GRANTS** Defendant's Motion To Dismiss **(#11)**.

## I. Background

The following background is taken from the complaint. Plaintiff is a "Caucasian-Anglo Saxon male, d/o/b/ 9/21/48." (#8, ¶ 10.) He worked for the University of Illinois on an annual contractual basis from 1988 to 2004. In 2003, he was given a one-year notice that his contract would not be renewed. His employment terminated on January 9, 2004.

From 1988 until 2004, Plaintiff was Director of Printing, and reported to Kathleen Pecknold, who held the position of Associate Vice-Chancellor for Administration and Human

Resources until 1999. His job evaluations indicated average or above-average performance. In 1999, Defendant Anderson assumed Ms. Pecknold's job responsibilities. Anderson reviewed Plaintiff's performance on June 12, 2000, and rated it above average. At the next review, on June 12 2001, Anderson rated Plaintiff's performance "commendable."

In October 2001, the University of Illinois hired Sonya Chambers as Director of Financial Affairs; she reported directly to Defendant Anderson. Ms. Chambers is an African-American female and is more than ten years younger than Plaintiff. Anderson intended to terminate Plaintiff from his position so that he could offer the position to Ms. Chambers.

A financial analysis performed at the close of the 2001 fiscal year showed that the Office of Printing Services had a deficit of over $1.1 million dollars. Defendant Anderson told Plaintiff that the deficit must be eliminated in one year. University policy usually allows three years to eliminate a deficit. Plaintiff alleges that a major part of the deficit arose from payment to Xerox for several hundred copiers that the University leased. In the fall of 2001, Anderson and Ms. Chambers began to manage the photocopy business themselves, negotiating with Xerox, excluding Plaintiff from the negotiations, and forbidding Plaintiff to speak with Xerox or University personnel regarding the Xerox contracts.

Under Plaintiff's direction, the Campus Publishing Services (hereinafter "CPS") of the Office of Printing Services acted as the University's copyright office, providing copyright permission services to University campuses. During the 1990s, CPS observed a steady decline in on-campus course packet production and attributed the decline to faculty ordering course packets from off-campus vendors who ignored copyright requirements. Plaintiff brought this to the attention of his immediate supervisor and University legal counsel several times during the 1990s, explaining that he believed off-campus vendors were violating the law. Under Plaintiff's direction, CPS produced a report on this activity and presented it at the Big Ten Printing and Copyright Conference at Michigan State University in October 2000. After presenting the

report, Plaintiff was directed to meet with Defendant Anderson and University employee Marcia Rotunda concerning the report. Shortly after the meeting, Anderson reprimanded Plaintiff for exposing the University to risk of suit by publishing and presenting the report.

Around December 2, 2002, Defendant Anderson gave Plaintiff a letter indicating his intention to terminate Plaintiff. Plaintiff responded on December 11, 2002. On December 17, 2002, Anderson told Plaintiff that he had not changed his decision to terminate Plaintiff. At that time he asked for Plaintiff's keys and phone and told Plaintiff not to return to his building.

In October 2003, Plaintiff and his CPS staff were asked to present a program on the same subject at the Big Ten Conference at Indiana University. Defendant Anderson told Plaintiff that Anderson would screen the presentation; he then told Plaintiff to cancel attendance by CPS personnel at the conference and directed CPS staff not to use vacation time to attend the conference.

Because he was a long-term employee, Plaintiff was entitled to one year of notice prior to termination. During the year, Plaintiff appealed his termination to the Council of Academic Professionals (hereinafter "CAP"). During the investigation, Ms. Chambers told CAP that Defendant Anderson offered her Plaintiff's job but she refused it. CAP completed its investigation and then ruled in favor of Plaintiff. By letter dated December 12, 2003, CAP recommended to Nancy Cantor, the University of Illinois Chancellor, that Plaintiff's employment not be terminated. After the one-year notice period, Plaintiff was terminated from the payroll on January 9, 2004.

Plaintiff's complaint alleges five counts as follows: Counts I and II, against the Board, allege discrimination in violation of Title VII, based on sex and race, respectively. Count III, against the Board, alleges discrimination based on age in violation of the ADEA. Count IV, against the Board and Defendant Anderson, alleges that Defendants violated his constitutional rights under the First Amendment pursuant to Section 1983 (42 U.S.C. § 1983). Count V,

against the Board and Anderson, alleges that Defendants violated his constitutional rights to due process under the Fourteenth Amendment pursuant to Section 1983.

## II.  Standard

When considering a motion to dismiss, the Court must accept as true all well-pleaded factual allegations in the claims, and draw all reasonable inferences in the light most favorable to the nonmoving party.  *Gutierrez v. Peters*, 111 F.3d 1364, 1368-69 (7th Cir. 1997).  The Court should dismiss the case only if the nonmoving party can prove no set of facts consistent with the allegations of the complaint that would entitle him to relief.  *Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1319-20 (7th Cir. 1997).

## III.  Analysis

Defendant Board argues that the Court should dismiss the claims in Counts III, IV, and V, and also should strike the claims for punitive damages against Defendant Board.  Specifically, Defendant contends that (1) the Eleventh Amendment bars Counts III, IV, and V as to the Board; (2) the Board is not a "person" for purposes of Section 1983 and therefore cannot be liable for the claims in Counts IV and V; (3) the statute of limitations bars the claims in Counts IV and V; and (4) punitive damages are not applicable to state entities.

### A.  The Constitutional Claims (Counts IV and V)

Defendant first argues that the Eleventh Amendment bars the constitutional claims in Counts IV and V.  Plaintiff responds that he is suing the members of the Board of Trustees in their individual capacities; therefore, the claims do not raise any sovereign immunity concerns.

As an initial matter, it is well established that a plaintiff cannot amend his complaint through arguments presented in legal memoranda.  *Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993).  Thus, Plaintiff's statement in his memorandum that he intended to sue each member of the Board of Trustees in his or her individual capacity does not change what he actually alleged in his amended complaint.

In his complaint, Plaintiff has not indicated whether he is suing the individual defendants in their individual or official capacity. *See Meadows v. State of Ind.*, 854 F.2d 1068, 1069 (7th Cir. 1988) ("If a plaintiff seeks to sue public officials in their personal capacities or in both their personal and official capacities, the plaintiff should expressly state so in the complaint."). When a plaintiff fails to indicate the capacity in which he is suing, the court will review the complaint to determine the capacity in which the plaintiff is seeking to sue. *Hill v. Shelander*, 924 F.2d 1370, 1373-74 (7th Cir. 1991).

In this case, the complaint does not sufficiently allege claims against individual Board members in their personal capacities. First, the caption of the complaint names the Board of Trustees, rather than individual Board members. Second, the gravamen of the complaint is that the Board, acting as the governing body of the University of Illinois, acted improperly in terminating Plaintiff's employment.

Plaintiff points out that he listed the names of the Board members in Paragraph 13 and he seeks punitive damages, which raises a possibility that Plaintiff seeks to sue the Board members in their individual capacities. *See Armstrong v. Squadrito*, 152 F.3d 564, 581 (7th Cir. 1998). However, the complaint fails to allege individual misconduct on the part of any of the individual Board members. Instead, Plaintiff's claims are expressly directed at his *employer*, the University of Illinois. For example, the complaint alleges that "violations of Title VII are based on the unlawful treatment of plaintiff by his employer, the defendant University of Illinois" (#8, ¶ 2), "violations of the First Amendment . . . are based on the unlawful treatment of plaintiff by his employer, UI" (#8, ¶ 3), "violations of the Fourteenth Amendment . . . are based on the unlawful treatment of plaintiff by his employer, UI" (#8, ¶¶ 4), "violations of the ADEA are based on the unlawful treatment of plaintiff by his employer, UI" (#8, ¶ 5), and "Plaintiff has been subjected and deprived of his due process rights by UI" (#8, ¶ 4). Thus, the complaint neither states nor implies that the claims are being brought against members of the Board in their personal capacities. Based solely on the complaint, the Court concludes that Plaintiff's constitutional claims are directed at Defendants in their official capacity.

Accordingly, the Court grants Defendant's motion to dismiss Counts IV and V based on the doctrine of sovereign immunity. Plaintiff may amend his complaint to clarify the capacity in which he wishes to sue.

### B. The ADEA Claim (Count III)

Defendant next argues that the Court should dismiss the ADEA claim based on sovereign immunity. Although Congress did not abrogate sovereign immunity when it enacted ADEA (*Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 374 (2001)), the State of Illinois has specifically consented to suit by statute. *See* 745 ILCS 5/1.5. This statute became effective January 1, 2004, and it does not have retroactive effect. *See Blalock v. Ill. Dep't of Human Servs.*, 349 F. Supp. 2d 1093, 1096 (N.D. Ill. 2004). Thus, sovereign immunity would bar any ADEA claim regarding the terms and conditions of Plaintiff's employment prior to January 1, 2004.

In addition to alleging an ADEA claim based on the terms and conditions of his employment, Plaintiff's claim in Count III also alleges that his employment was terminated in violation of ADEA. Defendant contends that Plaintiff's ADEA claim accrued on December 2, 2002 (when Defendant Anderson gave Plaintiff a letter indicating his intention to terminate Plaintiff's employment), or at the latest, on January 9, 2003 (when Anderson apparently gave Plaintiff a one-year notice). Both dates are well before the effective date of the statute.

The Court agrees. An ADEA claim based on termination of employment accrues when the employee receives notice of his pending termination, and not when the employee is actually discharged. *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990); *Heiar v. Crawford County,* 746 F.2d 1190, 1194 (7th Cir. 1984); *see also Del. State Coll. v. Ricks,* 449 U.S. 250, 258 (1980) (same rule in Title VII context). Applying the "discovery rule" to an ADEA case, the Seventh Circuit has explained how to determine when the statute of limitations begins to run:

6

> Accrual is the date on which the statute of limitations begins to run. It is not the date on which the wrong that injures the plaintiff occurs, but the date--often the same, but sometimes later--on which the plaintiff discovers that he has been injured. . . . [The discovery rule] is read into statutes of limitations in federal-question cases . . . in the absence of a contrary directive from Congress.

*Cada,* 920 F.2d at 450. Plaintiff alleges that on December 2, 2002, Defendant Anderson gave Plaintiff a letter indicating his intention to terminate Plaintiff's employment, and allowed Plaintiff to respond to the letter. On December 17, 2002, Anderson "advised [Plaintiff] that he had not altered his decision to terminate plaintiff." (#8, ¶ 27.) On January 9, 2003, Anderson apparently gave Plaintiff one year's notice that his employment would be terminated. The Court concludes that Plaintiff had notice that his rights under ADEA were violated by January 9, 2003, at the latest, and his ADEA claim accrued at that time, well before the effective date of the statute. Moreover, the fact that Plaintiff appealed the decision does not delay the accrual of his claim. *See Lever v. Nw. Univ.*, 979 F.2d 552, 556 (7th Cir. 1992) (holding that the plaintiff's claim accrued on the date she was informed of the employment decision); *see also Gorski v. Lewis Univ.*, No. 99C5244, 1999 WL 1250192, *2 (N.D. Ill. Dec. 22, 1999) (unreported). Because Illinois has not waived sovereign immunity for ADEA claims arising before January 1, 2004, Plaintiff's ADEA claim is barred. Accordingly, the Court grants the motion to dismiss the ADEA claim in Count III on the basis of sovereign immunity.

### C.  Statute of Limitations

In addition to its Eleventh Amendment argument, Defendant also argues, in a footnote, that the two-year statute of limitations for Section 1983 claims bars the claims in Counts IV and V. Specifically, Defendant contends that both claims accrued on December 2, 2002 (when Defendant Anderson gave Plaintiff a letter indicating his intention to terminate Plaintiff's employment), or at the latest, on January 9, 2003 (when Anderson apparently gave Plaintiff a one-year notice).

In response, Plaintiff asserts that the continuing violation theory applies here to toll the accrual of the claims, and contends that his claims accrued when Chancellor Nancy Cantor advised Plaintiff in writing that his employment had been terminated effective January 9, 2004. In addition, Plaintiff contends that the Court should apply the doctrine of equitable tolling to his claims.

### 1. Continuing Violation

The continuing violation doctrine governs the accrual of a claim. *Pitts v. City of Kankakee, Ill.*, 267 F.3d 592, 595 (7th Cir. 2001). While the statute of limitations generally begins to run from the date a plaintiff becomes aware he has been injured, the continuing violation doctrine may provide an exception to the statute of limitations when it "would be unreasonable to expect the plaintiff to perceive offensive conduct or when the earlier violation may be recognizable as actionable only in light of later events." *Id.* (citing *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 1999) (quotations omitted)). The doctrine may also apply in situations where each day or week brings a fresh wrong, such as Title VII wage discrimination claims. *See Bazemore v. Friday*, 478 U.S. 385, 396 (1986). However, the continuing violation doctrine is limited: "The exception as to continuing, ongoing acts does not apply where the alleged tortious acts . . . caused direct damages that occurred at a certain point in time – resulting in immediate and direct injury . . . with consequential effects." *Wilson v. Giesen*, 956 F.2d 738, 743 (7th Cir. 1991) (quoting S. Speiser, C. Krause & A. Gans, The American Law of Torts, § 5:27 at 890 (1983)). The Seventh Circuit has held that the doctrine "is not suited to cases . . . where the harm is definite and discoverable, and nothing prevented the plaintiff from coming forward to seek redress." *Wilson*, 956 F.2d at 743.

In this case, Plaintiff alleges separate constitutional violations, namely, (1) Defendant violated his constitutional rights under the First Amendment by requesting that he stop talking about the unlawful conduct of faculty members and by terminating his employment in retaliation for his expression of his views; and (2) Defendant violated Plaintiff's constitutional right to due

process when his employment was terminated without appropriate process. Unlike wage discrimination claims, where each day or week brings fresh wrongs, these constitutional claims allege discrete events that occurred at a specific point in time. In the language of the Seventh Circuit, the alleged harm to Plaintiff was "definite and discoverable," and Plaintiff was not prevented from seeking relief in federal court. *Id.* Thus, this Court declines to apply the continuing violation doctrine and must next determine the point in time at which Plaintiff's claims accrued.

### 2. Accrual of the Constitutional Claims

Section 1983 claims accrue when a plaintiff knows or should know that his or her constitutional rights have been violated. *Lawshe v. Simpson*, 16 F.3d 1475, 1478 (7th Cir. 1994). Here, Plaintiff alleges separate constitutional violations arising pursuant to Section 1983: First Amendment violations and a Fourteenth Amendment due process violation. In establishing when a plaintiff "knows" that his constitutional rights have been violated for statute of limitations purposes, the Seventh Circuit distinguishes between Fourteenth Amendment violations and First Amendment violations. *Lawshe*, 16 F.3d at 1480.

In a due process claim, the unconstitutional act is the deprivation, *without procedural due process*, of a property interest.[1] *Sherwin Manor Nursing Ctr., Inc. v. McAuliffe*, 37 F.3d 1216, 1220 (7th Cir. 1994). Therefore, a claim for deprivation of public employment without due process accrues on, and the statute of limitations begins to run from, the date the employment was actually terminated because that is the point at which the deprivation begins. *Id.* (citing *Lawshe*, 16 F.3d at 1480). Based on the complaint, Plaintiff's employment ended on January 9, 2004, and he filed his complaint in June 2005. Therefore, the two-year statute of limitations does not bar his due process claim.

---

[1] We note that Defendant Anderson has raised the question of whether Plaintiff has a protected property interest. However, Defendant Board did not raise that issue, therefore the Court will not consider it at this time.

A different analysis is used to determine when an alleged First Amendment violation occurs. *Sherwin Manor*, 37 F.3d at 1220. Plaintiff has alleged that Defendants violated his First Amendment rights by terminating his employment in retaliation for his exercise of his First Amendment rights. Unlike a due process claim, the United States Supreme Court has held that the statute of limitations on a claim of termination in violation of the First Amendment runs from the date a plaintiff receives notice that a decision to terminate has been made. *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981); *Sherwin Manor*, 37 F.3d at 1220; *Ladien v. Bd of Trs., Univ. of Ill.*, No. 93 C 6573, 1994 WL 395078, *5 (N.D. Ill. July 27, 1994) (unreported). Thus, the alleged decision to terminate constitutes the First Amendment violation, rather than the termination itself. *Id.*

Here, as in *Chardon*, Plaintiff's First Amendment claim alleges that Defendants terminated his employment in retaliation for his exercise of his First Amendment right to speak out on the topic of faculty conduct related to copyright issues. Plaintiff alleges that Defendant Anderson informed him on December 2, 2002, that his employment would be terminated after a one-year notice period. Therefore, the constitutional violation accrued when Plaintiff received notice of the decision, that is, on December 2, 2002, or, at the latest, on January 9, 2003, when Anderson gave Plaintiff one year's notice. Plaintiff filed his case in June 2005, well beyond the two-year limitations period for claims brought pursuant to Section 1983. Accordingly, the Court concludes that the statute of limitations bars Plaintiff's First Amendment claim regarding termination of employment.

It also appears that Plaintiff's claim in Count IV intends to allege that Defendants violated his rights under the First Amendment by the separate event of requesting that he not talk about certain conduct by faculty members. (*See* #8, ¶ 40.) Based on the complaint, it appears that this conduct might have occurred at two separate times, once after the 2000 Big Ten Printing and Copyright Conference, and once around the time of the 2003 conference (*see* #8, ¶¶ 24-26). Accordingly, to the extent that Plaintiff attempting to include claims based on this conduct, the

Court concludes that the statute of limitations would bar a claim based on conduct that occurred in 2000, but a claim based on the purported October 2003 conduct is timely.

### 3. Equitable Tolling

Finally, Plaintiff argues that, if the Court determines that the statute of limitations has run, the Court should equitably intervene and toll the limitations period because the underlying basis that led to Plaintiff's complaint was not "readily apparent." *See Clark v. City of Braidwood*, 318 F.3d 764, 767 (7th Cir. 2003). Specifically, Plaintiff contends that it cannot be determined at this point that it was readily apparent to him that his employment had terminated in 2002 or 2003 and it only became readily apparent when he received Chancellor Nancy Cantor's letter in January 2004.

This argument seems to address accrual of the claim rather than tolling because Plaintiff is apparently arguing that he did not "know" that his rights had been violated until he received Chancellor Cantor's letter. *See id.* (questioning whether the plaintiff confused equitable tolling with the discovery rule). In contrast, the doctrine of equitable tolling "assumes that the plaintiff *knows* he has been injured; the limitations period is tolled, however, if he cannot obtain information necessary to file suit." *Id.* (citing *Cada*, 920 F.2d at 451).

The doctrine of equitable tolling allows a plaintiff to avoid the effect of the statute of limitations "if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Cada*, 920 F.2d at 451 (citing *Holmberg v. Armbrecht,* 327 U.S. 392, 397 (1946)). In short, "a person is not required to sue within the statutory period if he cannot in the circumstances reasonably be expected to do so." *Heck v. Humphrey,* 997 F.2d 355, 357 (7th Cir. 1993) (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1376 (7th Cir. 1992)). According to the Seventh Circuit, the doctrine may apply in cases "where the plaintiff knows he has been injured but is unable to obtain evidence necessary to determine who may be liable for his injury." *White v. Cooper*, 55 F. Supp. 2d 848, 855 (N.D. Ill. 1999) (citing

*Cada*, 920 F.2d at 451); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 789 (7th Cir. 1995).

Here, Plaintiff's complaint alleges that Defendant Anderson informed him on December, 2, 2002, that he intended to terminate Plaintiff's employment, and Anderson reiterated that decision on December 17, 2002, and gave Plaintiff one year's notice of the termination around January 9, 2003. Plaintiff alleges no extraordinary circumstances that would justify applying the doctrine of equitable tolling to his First Amendment claim. Accordingly, the Court concludes that the statute of limitations bars the First Amendment claims related to termination of employment and the 2000 request that he stop discussing faculty conduct relating to copyright violations. The Court dismisses those claims on this basis as well as on the basis of sovereign immunity.

### C. Punitive Damages

Defendant next argues that the Court should strike the claims for punitive damages as to the Board. Although punitive damages are available in a suit brought against a governmental official in his or her individual capacity, they are not available from a governmental entity for constitutional claims brought pursuant to Section 1983 or for violations of Title VII or ADEA. *Kentucky v. Graham*, 473 U.S. 159, 167 n.13 (1984) (Section 1983); *Baker v. Runyon*, 114 F.3d 668, 669 (7th Cir. 1997) (Title VII); *Kiser v. Naperville Cmty. Unit*, 227 F. Supp. 2d 954, 961 (N.D. Ill. 2002) (ADEA) (citing *Pfeiffer v. Essex Wire Corp.*, 682 F.2d 684, 688 (7th Cir. 1982)). Because the Court has concluded that Plaintiff's complaint, as alleged, states official capacity claims, the Court strikes the language regarding punitive damages as to the Board of Trustees.

### IV. Summary

For the reasons set forth above, this Court **GRANTS** Defendant's Motion To Dismiss **(#11)** as follows:

  (1) the ADEA claim in Count III and the constitutional claims in Counts IV and V are barred by the doctrine of sovereign immunity;

  (2) in addition, the statute of limitations bars the constitutional claims in Count IV related to October 2000 conduct and termination of Plaintiff's employment; and

  (3) the Court strikes the language regarding punitive damages as to the Board of Trustees.

  Because it is conceivable that Plaintiff can amend his complaint to state claims that are not barred by the doctrine of sovereign immunity, the dismissal of those claims shall be without prejudice and Plaintiff shall be allowed to file an amended complaint within fourteen (14) days of entry of this order.

  ENTER this 3rd day of October, 2005.

                s/ DAVID G. BERNTHAL
                U.S. MAGISTRATE JUDGE