**E-FILED**
Wednesday, 05 October, 2005  03:20:00 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES  DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### Urbana Division

| | | |
|---|---|---|
| GEOFFREY W. BANT, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No.  05-2132 |
| BOARD OF TRUSTEES OF | ) | |
| UNIVERSITY OF ILLINOIS, | ) | |
| | ) | |
| Defendant. | ) | |

# ORDER

In June 2005, Plaintiff, Geoffrey Bant, filed a Complaint (#1) against Defendant, Board of Trustees of the University of Illinois (hereinafter "Board").  In July 2005, Plaintiff filed an Amended Complaint (#8) against the Board and Defendant Van Allen Anderson, alleging violations of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*) and the Age Discrimination in Employment Act (29 U.S.C. §§ 621-634) (hereinafter "ADEA"), and also alleging that Defendants violated Plaintiff's constitutional rights to free speech and due process. In August 2005, Plaintiff filed a document titled Amended Complaint Counts VI & VII (#17), adding Nancy Cantor as a defendant.  Federal jurisdiction is based on federal question pursuant to 28 U.S.C. § 1331 because Plaintiff's claims are based on federal law.  The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge.

In August 2005, Defendant Anderson filed a Motion To Dismiss (#23).  After reviewing the parties' pleadings and memoranda, this Court **GRANTS in part** and **DENIES in part** Defendant's Motion To Dismiss **(#23)**.

## I.  Background

The following background is taken from the complaint.  Plaintiff is a "Caucasian-Anglo Saxon male, d/o/b/ 9/21/48."  (#8, ¶ 10.)  He worked for the University of Illinois on an annual contractual basis from 1988 to 2004.  In 2003, he was given a one-year notice that his contract would not be renewed.  His employment terminated on January 9, 2004.  At the time of the events at issue, Defendant Anderson was Plaintiff's supervisor and Defendant Cantor was the

chancellor of the University of Illinois. Plaintiff brings his claims against Anderson and Cantor in their individual capacities.

From 1988 until 2004, Plaintiff was Director of Printing. He reported to Kathleen Pecknold, who held the position of Associate Vice-Chancellor for Administration and Human Resources until 1999. His job evaluations indicated average or above-average performance. In 1999, Defendant Anderson assumed Ms. Pecknold's job responsibilities. Anderson reviewed Plaintiff's performance on June 12, 2000, and rated it above average. At the next review, dated June 12, 2001, Anderson rated Plaintiff's performance "commendable."

Under Plaintiff's direction, the Campus Publishing Services (hereinafter "CPS") of the Office of Printing Services acted as the University's copyright office, providing copyright permission services to University campuses. During the 1990s, CPS observed a steady decline in on-campus course packet production and attributed the decline to faculty ordering course packets from off-campus vendors who ignored copyright requirements. Plaintiff brought this to the attention of his immediate supervisor and University legal counsel several times during the 1990s, explaining that he believed off-campus vendors were violating the law. Under Plaintiff's direction, CPS produced a report on this activity and presented it at the Big Ten Printing and Copyright Conference at Michigan State University in October 2000. After presenting the report, Plaintiff was directed to meet with Defendant Anderson and University employee Marcia Rotunda concerning the report. Shortly after the meeting, Anderson reprimanded Plaintiff for exposing the University to risk of suit by publishing and presenting the report.

In October 2001, the University of Illinois hired Sonya Chambers as Director of Financial Affairs; she reported directly to Defendant Anderson. Ms. Chambers is an African-American female and is more than ten years younger than Plaintiff. Anderson intended to terminate Plaintiff from his position so that he could offer the position to Ms. Chambers.

A financial analysis performed at the close of the 2001 fiscal year showed that the Office of Printing Services had a deficit of over $1.1 million dollars. Defendant Anderson told Plaintiff

that the deficit must be eliminated in one year. University policy usually allows three years to eliminate a deficit. Plaintiff alleges that a major part of the deficit arose from payment to Xerox for leases on several hundred copiers. In the fall of 2001, Anderson and Ms. Chambers began to manage the photocopy business themselves, negotiating with Xerox, excluding Plaintiff from the negotiations, and forbidding Plaintiff to speak with Xerox or University personnel regarding the Xerox contracts.

Around December 2, 2002, Defendant Anderson gave Plaintiff a letter indicating his intention to terminate Plaintiff. Plaintiff responded on December 11, 2002. On December 17, 2002, Anderson told Plaintiff that he had not changed his decision to terminate Plaintiff. At that time he asked for Plaintiff's keys and phone and told Plaintiff not to return to his building. Because he was a long-term employee, Plaintiff was entitled to one year of notice prior to termination. Plaintiff was apparently given notice in early January 2003.

In October 2003, Plaintiff and his CPS staff were asked to present a program at the Big Ten Conference at Indiana University on the same topic that they had addressed at the 2000 Big Ten Conference. Defendant Anderson told Plaintiff that Anderson would screen the presentation; he then told Plaintiff to cancel attendance by CPS personnel at the conference and directed CPS staff not to use vacation time to attend the conference.

During 2003, Plaintiff appealed his termination to the Council of Academic Professionals (hereinafter "CAP"). During the investigation, Ms. Chambers told CAP that Defendant Anderson had offered her Plaintiff's job but she refused it. CAP completed its investigation and then ruled in favor of Plaintiff. By letter dated December 12, 2003, CAP recommended to Defendant Cantor that Plaintiff's employment not be terminated. Plaintiff alleges that Cantor was the final decision-maker who terminated Bant from his position on January 15, 2004. After the one-year notice period, Plaintiff was terminated from the University payroll on January 9, 2004.

Plaintiff's amended complaint alleges seven counts as follows: Counts I and II, against the Board, allege discrimination in violation of Title VII, based on sex and race, respectively. Count III, against the Board, alleges discrimination based on age in violation of the ADEA. Count IV, against the Board and Defendant Anderson, alleges that Defendants violated his constitutional rights under the First Amendment pursuant to Section 1983 (42 U.S.C. § 1983). Count V, against the Board and Anderson, alleges that Defendants violated his constitutional right to due process under the Fourteenth Amendment pursuant to Section 1983. Count VI, against Defendant Cantor, alleges that Cantor violated his constitutional right to due process under the Fourteenth Amendment because she did not have all the information and documentation in her file when she made the decision to terminate Plaintiff, she failed to follow applicable procedures and statutes, and she disregarded CAP's recommendation. Count VII, against Cantor, alleges that Cantor violated his constitutional right under the First Amendment by terminating Plaintiff based on his speech regarding the conduct of University faculty.

## II. Standard

When considering a motion to dismiss, the Court must accept as true all well-pleaded factual allegations in the claims, and draw all reasonable inferences in the light most favorable to the nonmoving party. *Gutierrez v. Peters*, 111 F.3d 1364, 1368-69 (7th Cir. 1997). The Court should dismiss the case only if the nonmoving party can prove no set of facts consistent with the allegations of the complaint that would entitle him to relief. *Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1319-20 (7th Cir. 1997).

## III. Analysis

Defendant Anderson argues that the Court should dismiss the claims against him in Counts IV and V for the following reasons: (1) Plaintiff had no property interest in his employment, therefore he has no right to due process (Count V); (2) the statute of limitations bars the claims in Counts IV and V; and (3) Count V fails to allege that Anderson violated rights secured by federal law or the United States Constitution.

4

## A.  The Due Process Claim

Defendant Anderson first argues that Plaintiff has failed to state a due process claim in Count V because he had no property interest in his employment at the University of Illinois.  In *Upadhya v. Langenburg*, the Seventh Circuit stated that an employee "serving on a series of annual appointments, without an entitlement to renewal founded on state law, has no property interest in his position."  *Upadhya v. Langenburg*, 834 F.2d 661, 664 (7th Cir. 1987) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 576-78 (1972)).  When an employee lacks a property interest in the renewal of his appointment, his employer is not required to give him notice or an opportunity for a hearing.  *Id.* at 667.  Plaintiff does not challenge this argument.  Accordingly, the Court dismisses Plaintiff's due process claim in Count V.

The Court notes that Plaintiff has also not challenged Defendant's argument that Plaintiff failed to allege that Anderson violated rights secured by federal law or the Constitution. However, having disposed of Count V based on lack of property interest, the Court need not address this argument.

## B.  Statute of Limitations

Defendant Anderson also argues that the two-year statute of limitations for Section 1983 claims bars the claims in Counts IV and V.  Specifically, Defendant contends that both claims accrued on December 2, 2002 (when Anderson gave Plaintiff a letter indicating his intention to terminate Plaintiff's employment), or at the latest, on January 9, 2003 (when Anderson apparently gave Plaintiff a one-year notice).  Because the Court has dismissed the due process claim in Count V, it will not consider whether the statute of limitations bars that claim.

Plaintiff did not file a separate response to Defendant's motion to dismiss; instead he referred the Court to his response to a previous motion to dismiss, in which he asserts that the continuing violation theory applies to the accrual of the claims.  He contends that his claims accrued when Defendant Cantor advised Plaintiff in writing that his employment had been terminated effective January 9, 2004.  In addition, Plaintiff contends that the Court should apply the doctrine of equitable tolling to his claims.

5

**1. Continuing Violation**

The continuing violation doctrine governs the accrual of a claim. *Pitts v. City of Kankakee, Ill.*, 267 F.3d 592, 595 (7th Cir. 2001). Although the statute of limitations generally begins to run from the date a plaintiff becomes aware he has been injured, the continuing violation doctrine may provide an exception to the running of the statute of limitations when it "would be unreasonable to expect the plaintiff to perceive offensive conduct or when the earlier violation may be recognizable as actionable only in light of later events." *Id*. The doctrine may also apply in situations where each day or week brings a fresh wrong, such as Title VII wage discrimination claims. *See Bazemore v. Friday*, 478 U.S. 385, 396 (1986). However, the continuing violation doctrine is limited: "The exception as to continuing, ongoing acts does not apply where the alleged tortious acts . . . caused direct damages that occurred at a certain point in time – resulting in immediate and direct injury . . . with consequential effects." *Wilson v. Giesen*, 956 F.2d 738, 743 (7th Cir. 1991) (quoting S. Speiser, C. Krause & A. Gans, The American Law of Torts, § 5:27 at 890 (1983)). The Seventh Circuit has held that the doctrine is not suited to cases where the harm is definite and discoverable, and nothing prevented the plaintiff from coming forward to seek redress. *Wilson*, 956 F.2d at 743.

In Count IV, Plaintiff alleges that Defendant Anderson violated his constitutional rights under the First Amendment by requesting that he stop talking about the unlawful conduct of faculty members and by terminating his employment in retaliation for his expression of his views. Based on the allegations, the constitutional claims allege discrete events that occurred at a specific point in time. Plaintiff's arguments that the CAPS recommendation and Defendant Cantor's failure to accept the recommendation constitute ongoing events are not persuasive. In the language of the Seventh Circuit, the alleged harm to Plaintiff was "definite and discoverable," and Plaintiff was not prevented from seeking relief in federal court. *Id*. Thus, this Court declines to apply the continuing violation doctrine and must next determine the point in time at which Plaintiff's claims accrued.

## 2.  Accrual of the First Amendment Claims

Section 1983 claims accrue when a plaintiff knows or should know that his constitutional rights have been violated.  *Lawshe v. Simpson*, 16 F.3d 1475, 1478 (7th Cir. 1994).  In establishing when a plaintiff "knows" that his constitutional rights have been violated for statute of limitations purposes, the Seventh Circuit distinguishes between Fourteenth Amendment violations and First Amendment violations.  *Lawshe*, 16 F.3d at 1480.

Plaintiff has alleged that Defendant Anderson violated his First Amendment rights by terminating his employment in retaliation for Plaintiff's exercise of his First Amendment rights. The United States Supreme Court has held that the statute of limitations on a claim of termination in violation of the First Amendment runs from the date the plaintiff receives notice that a decision to terminate has been made.  *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981); *Sherwin Manor Nursing Ctr., Inc. v. McAuliffe*, 37 F.3d 1216, 1220 (7th Cir. 1994); *Ladien v. Bd of Trs., Univ. of Ill.*, No. 93 C 6573, 1994 WL 395078, *5 (N.D. Ill. July 27, 1994) (unreported). Thus, the alleged *decision* to terminate constitutes the First Amendment violation, rather than the termination itself.  *Id.*

Here, as in *Chardon*, Plaintiff's First Amendment claim alleges that Defendants terminated his employment in retaliation for his exercise of his First Amendment right to speak out on the topic of faculty conduct related to copyright issues.  Plaintiff alleges that Defendant Anderson gave him a letter on December 2, 2002, indicating his intention to terminate Plaintiff, and, on December 17, 2002, he told Plaintiff he had not changed his decision.  (#8, ¶ 27.) Therefore, the constitutional violation accrued when Plaintiff first became aware of the decision, that is, on December 2, 2002, or, at the latest, on January 9, 2003, when Anderson gave Plaintiff one year's notice.  Plaintiff filed his case in June 2005, well beyond the two-year limitations period for claims brought pursuant to Section 1983.  Accordingly, the Court concludes that the statute of limitations bars Plaintiff's First Amendment claim regarding the termination of his employment.

Plaintiff's claim in Count IV also appears to allege that Defendant violated his rights under the First Amendment by the separate events of requesting that he not talk about certain conduct by faculty members. (*See* #8, ¶ 40.) Based on the complaint, it appears that this conduct occurred at two separate times, once after the 2000 Big Ten Printing and Copyright Conference, and once around the time of the 2003 conference (*see* #8, ¶¶ 24-26). Accordingly, to the extent that Plaintiff is attempting to include claims based on this conduct, the Court concludes that the statute of limitations would bar a claim based on conduct that occurred in 2000, but a claim based on the alleged October 2003 conduct is timely.

### 3. Equitable Tolling

Finally, Plaintiff argues that, if the Court determines that the statute of limitations has run, the Court should equitably intervene and toll the limitations period because the underlying basis that led to Plaintiff's complaint was not "readily apparent." *See Clark v. City of Braidwood*, 318 F.3d 764, 767 (7th Cir. 2003). Specifically, Plaintiff contends that it cannot be determined at this point that it was readily apparent to him that his employment had terminated in 2002 or 2003 and it only became readily apparent when he received Defendant Cantor's letter in January 2004.

This argument seems to address accrual of the claim rather than tolling because Plaintiff is apparently arguing that he did not "know" that his rights had been violated until he received Defendant Cantor's letter. *See id.* (questioning whether the plaintiff confused equitable tolling with the discovery rule). In contrast, the doctrine of equitable tolling "assumes that the plaintiff *knows* he has been injured; the limitations period is tolled, however, if he cannot obtain information necessary to file suit." *Id.* (citing *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 451 (7th Cir. 1990)). Here, Plaintiff has alleged as follows:

> That on or about 12/02/02 Anderson gave plaintiff a letter indicating his intention to terminate Bant and gave Bant two days to respond to his allegation. Bant asked for an extension and responded on 12/11/02 but on 12/17/02 Bant attended a meeting in Anderson's office at which time Anderson advised Bant that he had not altered his decision to terminate plaintiff, asked for plaintiff's keys and phone and told plaintiff not to return to his building.

(#8, ¶ 27.)  Thus, Plaintiff knew of the injury around December 2002.

When a statute of limitations is borrowed from state law, as it is for Section 1983 claims, the state doctrine of equitable tolling governs.  *Shropshear v. Corp. Counsel of City of Chi.*, 275 F.3d 593, 596 (7th Cir. 2001).  Although the federal doctrine is well-established, it is unclear whether the doctrine exists in Illinois.  *Id.*; *Clark v. City of Braidwood*, 318 F.3d 764, 767 (7th Cir. 2003).  Nevertheless, in *Shropshear*, which involved Section 1983 claims, the Seventh Circuit considered whether equitable tolling would apply, so we will, too.

The doctrine of equitable tolling allows a plaintiff to avoid the effect of the statute of limitations "if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim."  *Cada*, 920 F.2d at 451 (citing *Holmberg v. Armbrecht,* 327 U.S. 392, 397 (1946)).

Here, Plaintiff's complaint alleges that Defendant Anderson informed him on December 2, 2002, that he intended to terminate Plaintiff's employment.  Anderson reiterated that decision on December 17, 2002, and gave Plaintiff one year's notice of the termination around January 9, 2003.  Plaintiff alleges no extraordinary circumstances that would justify applying the doctrine of equitable tolling to his First Amendment claim.  Therefore, the statute of limitations bars the First Amendment claims related to termination of employment and the 2000 request that Plaintiff stop discussing faculty conduct relating to copyright violations.  The Court dismisses those claims.

## IV.  Summary

For the reasons set forth above, this Court **GRANTS** Defendant's Motion To Dismiss **(#23)** with prejudice as to the due process claim in Count V and as to the First Amendment claims related to termination and the 2000 request that Plaintiff stop discussing faculty conduct

in Count IV.  The Court **DENIES** the motion as to the First Amendment claim in Count IV related to the 2003 request that Plaintiff stop discussing faculty conduct.

ENTER this 5th day of October, 2005.

_____s/ DAVID G. BERNTHAL_____
U.S. MAGISTRATE JUDGE