## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
**Urbana Division**

| | |
|---|---|
| **GEOFFREY W. BANT,** ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| **BOARD OF TRUSTEES OF** ) | |
| **UNIVERSITY OF ILLINOIS;** ) | |
| **VAN ALLEN ANDERSON, individually;** ) | |
| **NANCY E. CANTOR, sued as** ) | |
| Nancy Cantor, individually, as former ) | |
| Chancellor of the University of Illinois Board ) | |
| of Trustees of the University of Illinois; ) | Case No. 05-2132 |
| **FRANCES G. CARROLL,** ) | |
| **KENNETH D. SCHMIDT,** ) | |
| **DAVID V. DORRIS,** ) | |
| **DEVON C. BRUCE,** ) | |
| **NIRANJAN SHAH,** ) | |
| **ROBERT Y. SPERLING,** ) | |
| **LAWRENCE C. EPPLEY,** ) | |
| **MARJORIE E. SODEMANN,** ) | |
| **ROBERT F. VICKREY, all in their** ) | |
| individual capacity, as members of ) | |
| the Board of Trustees of the ) | |
| University of Illinois, ) | |
| Defendants. ) | |

# ORDER

In June 2005, Plaintiff, Geoffrey Bant, filed a Complaint (#1) against Defendant, Board of Trustees of the University of Illinois (hereinafter "Board").  In July 2005, Plaintiff filed an Amended Complaint (#8), adding Van Allen Anderson as a defendant.  In August 2005, Plaintiff filed an Amended Complaint Counts VI & VII (#17), adding Nancy Cantor as a defendant.  In October 2005, Plaintiff filed a Second Amended Complaint (#30), adding individual Board members as defendants.  Federal jurisdiction is based on federal question pursuant to 28 U.S.C. § 1331 because Plaintiff's claims are based on federal law.  The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge.

In November 2005, Defendant Cantor filed a Motion To Dismiss Counts VI and VII of Plaintiff's Second Amended Complaint (#34). After reviewing the parties' pleadings and memoranda, this Court **GRANTS** Defendant Cantor's Motion To Dismiss Counts VI and VII of Plaintiff's Second Amended Complaint **(#34)**.

### I. Background

The following background is taken from the complaint. At relevant times, Defendant Cantor was Chancellor of the University of Illinois. Plaintiff is a "Caucasian-Anglo Saxon male, d/o/b/ 9/21/48." (#8, ¶ 10.) He worked for the University of Illinois on an annual contractual basis from 1988 to 2004. In 2003, he was given a one-year notice that his contract would not be renewed. His employment with the University ended on January 9, 2004.

From 1988 until 2004, Plaintiff was Director of Printing, and reported to Kathleen Pecknold, who held the position of Associate Vice-Chancellor for Administration and Human Resources until 1999. His job evaluations indicated average or above-average performance. In 1999, Defendant Van Allen Anderson assumed Ms. Pecknold's job responsibilities. Anderson reviewed Plaintiff's performance on June 12, 2000, and rated it above average. At the next review, on June 12, 2001, Anderson rated Plaintiff's performance "commendable."

In October 2001, the University of Illinois hired Sonya Chambers as Director of Financial Affairs; she reported directly to Defendant Anderson. Ms. Chambers is an African-American female and is more than ten years younger than Plaintiff. Anderson intended to terminate Plaintiff from his position so that he could offer the position to Ms. Chambers.

A financial analysis performed at the close of the 2001 fiscal year showed that the Office of Printing Services had a deficit of over $1.1 million dollars. Defendant Anderson told Plaintiff that the deficit must be eliminated in one year. University policy usually allows three years to eliminate a deficit. Plaintiff alleges that a major part of the deficit arose from payment to Xerox for several hundred copiers that the University leased. In the fall of 2001, Anderson and

Ms. Chambers began to manage the photocopy business themselves, negotiating with Xerox, excluding Plaintiff from the negotiations, and forbidding Plaintiff to speak with Xerox or University personnel regarding the Xerox contracts.

Under Plaintiff's direction, the Campus Publishing Services (hereinafter "CPS") of the Office of Printing Services acted as the University's copyright office, providing copyright permission services to University campuses. During the 1990s, CPS observed a steady decline in on-campus course packet production and attributed the decline to faculty ordering course packets from off-campus vendors who ignored copyright requirements. Plaintiff brought this to the attention of his immediate supervisor and University legal counsel several times during the 1990s, explaining that he believed off-campus vendors were violating the law. Under Plaintiff's direction, CPS produced a report on this activity and presented it at the Big Ten Printing and Copyright Conference in October 2000. After presenting the report, Plaintiff was directed to meet with Defendant Anderson and University employee Marcia Rotunda concerning the report. Shortly after the meeting, Anderson reprimanded Plaintiff for exposing the University to risk of suit by publishing and presenting the report.

Around December 2, 2002, Defendant Anderson gave Plaintiff a letter indicating his intention to terminate Plaintiff. Plaintiff responded on December 11, 2002. On December 17, 2002, Anderson told Plaintiff that he had not changed his decision to terminate Plaintiff. At that time he asked for Plaintiff's keys and phone and told Plaintiff not to return to his building.

In October 2003, Plaintiff and his CPS staff were asked to present a program on the same subject at the 2003 Big Ten Conference. Defendant Anderson told Plaintiff that Anderson would screen the presentation; he then told Plaintiff to cancel attendance by CPS personnel at the conference and directed CPS staff not to use vacation time to attend the conference.

Because he was a long-term employee, Plaintiff was entitled to one year of notice prior to termination. During the year, Plaintiff appealed his termination to the Council of Academic Professionals (hereinafter "CAP"). During CAP's investigation, Ms. Chambers told CAP that

Defendant Anderson offered her Plaintiff's job but she refused it.  CAP completed its investigation and then ruled in favor of Plaintiff.  By letter dated December 12, 2003, CAP recommended to Defendant Cantor that Plaintiff's employment not be terminated.  Cantor disregarded CAP's recommendation and denied Plaintiff's appeal.  After the one-year notice period, Plaintiff's employment with the University ended January 9, 2004.

Plaintiff's amended complaint alleges two counts against Defendant Cantor, as follows: Count VI alleges that Cantor violated Plaintiff's constitutional rights to due process under the Fourteenth Amendment pursuant to Section 1983 (42 U.S.C. § 1983).  Specifically, Count VI alleges that Cantor violated Plaintiff's right to due process by not having all the information and documentation in her file, by disregarding CAP's recommendation, and by failing to follow the procedures and statutes in place for the termination of a year-to-year contractual employee. Count VII alleges that Defendant Cantor violated Plaintiff's constitutional rights under the First Amendment by "specifically terminating plaintiff due to his expressions of unlawful conduct of UI faculty members and requesting cessation of such activity."  (#17, ¶ 60.)

## II.  Standard

When considering a motion to dismiss, the Court must accept as true all well-pleaded factual allegations in the claims, and draw all reasonable inferences in the light most favorable to the nonmoving party.  *Gutierrez v. Peters*, 111 F.3d 1364, 1368-69 (7th Cir. 1997).  The Court should dismiss the case only if the nonmoving party can prove no set of facts consistent with the allegations of the complaint that would entitle him to relief.  *Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1319-20 (7th Cir. 1997).

## III.  Analysis
### A.  The Due Process Claim (Count VI)

Defendant Cantor argues that the Court should dismiss the due process claim because Plaintiff has no property interest in his employment, his due process claim rests on a violation of state law rather than a violation of constitutional due process, the allegations show that he received all the process that was due him, and the statute of limitations bars the claim.

Plaintiff responds that he does indeed have a property interest in his employment "created under state law and the role of the campus Counsel of Academic Professionals." (#37, p. 3.) In support, he cites two unpublished cases. Those cases describe the foundation for a property interest but do not support his argument: In one of those cases, the plaintiff is a tenured professor; in the other, the plaintiff is an at-will employee.

Plaintiff's due process claim alleges that Defendant Cantor violated his right to due process by not having all the information and documentation in her file, by disregarding CAP's recommendation, and by failing to follow the procedures and statutes in place for the termination of a year-to-year contractual employee. These allegations indicate that Plaintiff is confusing state-created procedural requirements with constitutionally-protected interests. As Plaintiff stated in his memorandum, state law can be a source of substantive entitlements to property that are protected by the due process clause. However, state-created procedural requirements do not, standing alone, constitute protected property interests or create substantive entitlements. "It is by now well-established that in order to demonstrate a property interest worthy of protection under the fourteenth amendment's due process clause, a party may not simply rely upon the procedural guarantees of state law or local ordinance." *Cain v. Larson*, 879 F.2d 1424, 1426 (7th Cir. 1989) (holding that the Illinois Uniform Peace Officers' Disciplinary Act did not create a property interest in continued employment by a former village police officer). In order to give rise to a constitutionally protected property interest, a statute or ordinance must go beyond mere procedural guarantees to provide some substantive criteria limiting the state's discretion--as can be found, for example, in a requirement that employees be fired only "for cause." *Id.* If a statute or regulation merely describes what procedures must be followed before an employee is fired, then it does not contain the requisite substantive predicate. *Id.* (citing *Bishop v. Wood*, 426 U.S. 341, 347 (1976) (holding that no property interest exists where an employee is merely given certain procedural rights)). Thus, the right to notice and a hearing, or to an appeal and investigation by CAP, as Plaintiff has alleged here, does not change the essential character of the employment relationship. Therefore, it does not create a Fourteenth Amendment property right. *See Moulton v. Vigo County*, 150 F.3d 801, 805 (7th Cir. 1998) (stating that the entitlement to a

hearing is not relevant to determining whether he had a property interest in continued employment).

In *Upadhya v. Langenburg*, the Seventh Circuit stated that an employee such as Plaintiff, who is employed for "a series of annual appointments, without an entitlement to renewal founded on state law, has no property interest in his position." *Upadhya v. Langenburg*, 834 F.2d 661, 664 (7th Cir. 1987). Accordingly, the Court dismisses Plaintiff's due process claim in Count VI.

### B. The First Amendment Claim (Count VII)

Defendant Cantor next argues that the two-year statute of limitations for a Section 1983 claim bars the First Amendment claim against her in Count VII.

In a previous order (Opinion #29, p. 6), the Court determined that Plaintiff had alleged two possible grounds for a First Amendment claim against Defendant Anderson: the termination of his employment and the requests that he not talk about certain conduct by faculty members. To the extent that Plaintiff is attempting to state a claim against Defendant Cantor related to the requests that Plaintiff stop talking about faculty conduct, the Court notes that the complaint alleges that Anderson, not Cantor, made those requests or orders. Thus, the only First Amendment claim against Cantor is related to the termination of Plaintiff's employment.

It is well-settled that the statute of limitations for a claim of termination in violation of the First Amendment runs from the date the plaintiff receives notice that a decision to terminate has been made. The *decision* to terminate constitutes the First Amendment violation, rather than the termination itself. *See Chardon v. Fernandez*, 454 U.S. 6, 8 (1981); *Sherwin Manor Nursing Ctr., Inc. v. McAuliffe*, 37 F.3d 1216, 1220 (7th Cir. 1994); *Ladien v. Bd of Trs., Univ. of Ill.*, No. 93 C 6573, 1994 WL 395078, *5 (N.D. Ill. July 27, 1994) (unreported). Furthermore, the denial of an appeal does not affect the accrual date or constitute a fresh act of discrimination. *Del. State Coll. v. Ricks*, 449 U.S. 250, 261 (1980) (holding that the pendency of a grievance or other form of review or appeal does not toll the running of the limitations periods); *Lever v. Nw.*

*Univ.*, 979 F.2d 552, 556 (7th Cir. 1992) ("An employer's refusal to undo a discriminatory decision is not a fresh act of discrimination.").

In its previous order, the Court determined that Plaintiff's claim that his termination violated the First Amendment accrued "when Plaintiff first became aware of the decision, that is, on December 2, 2002, or, at the latest, on January 9, 2003, when Anderson gave Plaintiff one year's notice." (#29, p. 7.)  The allegation that Defendant Cantor failed to rescind Plaintiff's termination does not constitute a "fresh act of discrimination."  See *Ricks*, 449 U.S. at 261. Accordingly, the statute of limitations bars Plaintiff's claim in Count VII.

### IV.  Summary

For the reasons set forth above, this Court **GRANTS** Defendant Cantor's Motion To Dismiss Counts VI and VII of Plaintiff's Second Amended Complaint **(#34)**.

ENTER this 21st day of December, 2005.

                                                      s/ DAVID G. BERNTHAL
                                                        U.S. MAGISTRATE JUDGE