E-FILED
Thursday, 12 January, 2006  08:57:48 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES  DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### Urbana Division

| | |
|---|---|
| GEOFFREY W. BANT, | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) Case No.  05-2132 |
| BOARD OF TRUSTEES OF | ) |
| UNIVERSITY OF ILLINOIS, | ) |
| | ) |
| Defendant. | ) |

# ORDER

In June 2005, Plaintiff, Geoffrey Bant, filed a Complaint (#1) against Defendant, Board of Trustees of the University of Illinois (hereinafter "Board").  In July 2005, Plaintiff filed an Amended Complaint (#8), adding Van Allen Anderson as a defendant.  In August 2005, Plaintiff filed an Amended Complaint Counts VI & VII (#17), adding Nancy Cantor as a defendant.  In October 2005, Plaintiff filed a Second Amended Complaint (#30), adding as Defendants the following members of the Board of Trustees:  Frances G. Carroll, Kenneth D. Schmidt, David V. Dorris, Devon C. Bruce, Niranjan S. Shah, Robert Y. Sperling, Lawrence C. Eppley, Marjorie E. Sodemann, and Robert F. Vickrey.  Federal jurisdiction is based on federal question pursuant to 28 U.S.C. § 1331 because Plaintiff's claims are based on federal law.  The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge.

In December 2005, Defendants Board Members and Anderson filed a Motion To Dismiss (#38).  After reviewing the Plaintiff's pleadings and memorandum, this Court **GRANTS** Defendants Board Members and Anderson's Motion To Dismiss **(#38)**.

## I. Background

The following background is taken from the complaint.  Plaintiff is suing all Defendants in their individual capacities.  Defendants Carroll, Schmidt, Dorris, Bruce, Shah, Sperling, Eppley, Sodemann, and Vickrey are members of the Board of Trustees of the University of Illinois.  At relevant times, Defendant Cantor was Chancellor of the University of Illinois.  Plaintiff is a "Caucasian-Anglo Saxon male, d/o/b/ 9/21/48."  (#8, ¶ 10.)  He worked for the

University of Illinois on an annual contractual basis from 1988 to 2004. In 2003, he was given a one-year notice that his contract would not be renewed. His employment with the University ended on January 9, 2004.

From 1988 until 2004, Plaintiff was Director of Printing. He reported to Kathleen Pecknold, who held the position of Associate Vice-Chancellor for Administration and Human Resources until 1999. His job evaluations indicated average or above-average performance. In 1999, Defendant Anderson assumed Ms. Pecknold's job responsibilities. Anderson reviewed Plaintiff's performance on June 12, 2000, and rated it above average. At the next review, on June 12, 2001, Anderson rated Plaintiff's performance "commendable."

In October 2001, the University of Illinois hired Sonya Chambers as Director of Financial Affairs; she reported directly to Defendant Anderson. Ms. Chambers is an African-American female and is more than ten years younger than Plaintiff. Anderson intended to terminate Plaintiff from his position so that he could offer the position to Ms. Chambers.

A financial analysis performed at the close of the 2001 fiscal year showed that the Office of Printing Services had a deficit of over $1.1 million dollars. Defendant Anderson told Plaintiff that the deficit must be eliminated in one year. University policy usually allows three years to eliminate a deficit. Plaintiff alleges that a major portion of the deficit arose from lease payments to Xerox for several hundred copiers. In the fall of 2001, Anderson and Ms. Chambers began to manage the photocopy business themselves, negotiating with Xerox, excluding Plaintiff from the negotiations, and forbidding Plaintiff to speak with Xerox or University personnel regarding the Xerox contracts.

Under Plaintiff's direction, the Campus Publishing Services (hereinafter "CPS") of the Office of Printing Services acted as the University's copyright office, providing copyright permission services to University campuses. During the 1990s, CPS observed a steady decline in on-campus course packet production and attributed the decline to faculty ordering course packets from off-campus vendors who ignored copyright requirements. Plaintiff brought this to

2

the attention of his immediate supervisor and University legal counsel several times during the 1990s, explaining that he believed off-campus vendors were violating the law.  Under Plaintiff's direction, CPS produced a report on this activity and presented it at the Big Ten Printing and Copyright Conference in October 2000.  After presenting the report, Plaintiff was directed to meet with Defendant Anderson and University employee Marcia Rotunda concerning the report.  Shortly after the meeting, Anderson reprimanded Plaintiff for exposing the University to risk of suit by publishing and presenting the report.

Around December 2, 2002, Defendant Anderson gave Plaintiff a letter indicating his intention to terminate Plaintiff.  Plaintiff responded on December 11, 2002.  On December 17, 2002, Anderson told Plaintiff that he had not changed his decision to terminate Plaintiff.  At that time he asked for Plaintiff's keys and phone and told Plaintiff not to return to his building.

In October 2003, Plaintiff and his CPS staff were asked to present a program at the 2003 Big Ten Conference on the same subject as their presentation at the 2000 Big Ten Conference.  Defendant Anderson told Plaintiff that Anderson would screen the presentation; he then told Plaintiff to cancel attendance by CPS personnel at the conference and directed CPS staff not to use vacation time to attend the conference.

Because he was a long-term employee, Plaintiff was entitled to one year of notice prior to termination.  During the year, Plaintiff appealed his termination to the Council of Academic Professionals (hereinafter "CAP").  During CAP's investigation, Ms. Chambers told CAP that Defendant Anderson offered her Plaintiff's job but she refused it.  CAP completed its investigation and then ruled in favor of Plaintiff.  By letter dated December 12, 2003, CAP recommended to Defendant Cantor that Plaintiff's employment not be terminated.  Cantor disregarded CAP's recommendation and denied Plaintiff's appeal.  After the one-year notice period, Plaintiff's employment with the University ended on January 9, 2004.

Plaintiff's second amended complaint alleges that Defendants Board Members and Anderson violated Plaintiff's constitutional right to due process under the Fourteenth

3

Amendment pursuant to Section 1983 (42 U.S.C. § 1983).  Specifically, Count V alleges as follows:

> 45.  That UI did not abide by its own procedures and regulations when it terminated plaintiff and specifically Chancellor Canton (*sic*) did not follow the recommendations of CAP which was the only substantive investigation conducted regarding plaintiff's grievance.  Plaintiff's due process rights were violated by not having all the information and documentation in his file, by denying plaintiff a review process that was procedurally and substantially adequate and by Cantor disregarding the recommendation of CAP that plaintiff's termination should be rescinded.

> 46.  That the aforementioned acts of defendants Frances G. Carroll, Kenneth D. Schmidt, David V. Dorris, Devon C. Bruce, Niranjan S. Shah, Robert Y. Sperling, Lawrence C. Eppley, Marjorie E. Sodemann, and Robert F. Vickrey, in their individual capacity, as members of the Board of Trustees of the University of Illinois, who ratified the actions of Anderson and Cantor, all of whom were acting under color of state law constitute unlawful violation(s) of plaintiff's Fourteenth Amendment Rights and 42 U.S.C. Section 1983.

> 47.  That the acts by the employees under the administration of UI including defendants Anderson and Cantor, individually, and Frances G. Carroll, Kenneth D. Schmidt, David V. Dorris, Devon C. Bruce, Niranjan S. Shah, Robert Y. Sperling, Lawrence C. Eppley, Marjorie E. Sodemann, and Robert F. Vickrey, in their individual capacity, as members of the Board of Trustees of the University of Illinois, directly and foreseeably resulted in an unlawful and unreasonable violation(s) of plaintiff's Fourteenth Amendment Rights and 42 U.S.C. Section 1983.

(#30, ¶¶ 45-47.)


## II.  Standard

When considering a motion to dismiss, the Court must accept as true all well-pleaded factual allegations in the claims, and draw all reasonable inferences in the light most favorable to the nonmoving party.  *Gutierrez v. Peters*, 111 F.3d 1364, 1368-69 (7th Cir. 1997).  The Court should dismiss the case only if the nonmoving party can prove no set of facts consistent with the allegations of the complaint that would entitle him to relief.  *Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1319-20 (7th Cir. 1997).

4

### III.  Analysis

Defendants argue that the Court should dismiss Count V for the following reasons:  (1) as to Defendant Anderson, the Court has dismissed a previously alleged claim of due process on the basis that Plaintiff did not have a property interest in his job; and (2) as to Defendant Dorris, Dorris became a member of the Board effective March 28, 2005, after the events alleged in the complaint.  As to the remaining Board members, Defendants contend that (3) Plaintiff has no property interest in his employment; (4) the statute of limitations has run; and (5) Plaintiff's due process claim rests on allegations that the Board violated internal state procedures and the allegations show that he received all the process that was due him.

Plaintiff's due process claim alleges that Defendants violated his right to due process because they did not abide by Board procedures and regulations during the process of Plaintiff's termination; Chancellor Cantor did not have all the information and documentation on Plaintiff's situation in her file and she disregarded CAP's recommendation; and the Board denied Plaintiff a review process that was procedurally and substantially adequate.  These allegations indicate that Plaintiff is confusing state-created procedural requirements with constitutionally-protected interests.

State law can be a source of substantive entitlements to property that are protected by the due process clause.  *Wilson v. Formigoni*, 42 F.3d 1060, 1066 (7th Cir. 1994).  However, state-created procedural requirements do not, standing alone, constitute protected property interests or create substantive entitlements.  *Id.*  "It is by now well-established that in order to demonstrate a property interest worthy of protection under the fourteenth amendment's due process clause, a party may not simply rely upon the procedural guarantees of state law or local ordinance."  *Cain v. Larson*, 879 F.2d 1424, 1426 (7th Cir. 1989) (holding that the Illinois Uniform Peace Officers' Disciplinary Act did not create a property interest in continued employment by a former village police officer).  In order to give rise to a constitutionally protected property interest, a statute or ordinance must go beyond mere procedural guarantees to provide some substantive criteria limiting the state's discretion--as can be found, for example, in a requirement that employees be fired only "for cause."  *Id.*  If a statute or regulation merely describes what procedures must be

5

followed before an employee is fired, then it does not contain the requisite substantive predicate required for a due process claim. *Id.* (citing *Bishop v. Wood*, 426 U.S. 341, 347 (1976) (holding that no property interest exists where an employee is merely given certain procedural rights)). Thus, the right to notice and a hearing, or to an appeal and investigation by CAP, as Plaintiff has alleged here, does not change the essential character of the employment relationship or create a Fourteenth Amendment property right. *See Moulton v. Vigo County*, 150 F.3d 801, 805 (7th Cir. 1998) (stating that the entitlement to a hearing is not relevant to determining whether an employee had a property interest in continued employment).

Plaintiff has alleged that he was employed on an annual contractual basis. In *Upadhya v. Langenburg*, the employee was employed pursuant to a series of annual appointments, an arrangement similar to Plaintiff's employment situation. The Seventh Circuit stated that an employee who is employed for "a series of annual appointments, without an entitlement to renewal founded on state law, has no property interest in his position." *Upadhya v. Langenburg*, 834 F.2d 661, 664 (7th Cir. 1987). Consistent with that holding, the Court finds that Plaintiff has no property interest in his position. Accordingly, the Court dismisses Plaintiff's due process claim in Count V of the Second Amended Complaint. The Court need not address Defendants' other arguments.

## IV.  Summary

For the reasons set forth above, this Court **GRANTS** Defendant Board Members and Anderson's Motion To Dismiss **(#38)**.

ENTER this 11th day of January, 2006.

_____s/ DAVID G. BERNTHAL_____
U.S. MAGISTRATE JUDGE

6