**E-FILED**
Thursday, 24 August, 2006  04:25:38 PM
Clerk, U.S. District Court, ILCD

05442-P7148
EMW/cp
G:\48\P7148\P7148PMI 004

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| GEOFFREY W. BANT, | ) | |
| Plaintiff, | ) | |
| vs. | ) | No.: 05-2132 |
| BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, and VAN ALLEN ANDERSON, | ) | |
| Defendants. | ) | |

## REQUEST FOR ADMISSION OF FACTS AND GENUINENESS OF DOCUMENTS

NOW COME the defendants, BOARD OF TRUSTEES OF THE UNIVERSITY OF

ILLINOIS and VAN ALLEN ANDERSON, by their attorneys, Edward M. Wagner of HEYL,

ROYSTER, VOELKER & ALLEN, and pursuant to F.R.Civ. Proc. 36(a) request that the

plaintiff admit, or deny under oath, the following relevant facts and genuineness of documents,

as follows:

1.    That the Big Ten Printing And Copyright Conference at Indiana University

which is currently alleged in paragraph 26 of the plaintiff's Amended Complaint filed  July 11,

2005, was held in October, 2002, and not in October, 2003.

2.    That the allegations of all alleged activity of statements which are attributed to

defendant Anderson and alleged to have been done, said or directed by defendant Anderson in

paragraph 26 of the plaintiff's Amended Complaint filed July 11, 2005, should be alleged to

have occurred in and prior to the month of October, 2002.

**HEYLROYSTER**
**VOELKER**
**&ALLEN**

Suite 300
102 E. Main Street
P.O. Box 129
Urbana, IL 61803-0129
Fax (217) 344-9295
(217) 344-0060

Exhibit "_F_"

3.    That attached hereto and incorporated by reference herein and marked as Exhibit "A" is a true and correct copy of "PLAINTIFF'S INITIAL RULE 26 DISCLOSURES", with all attachments.

4.    That one of the attachments produced and exchanged by the plaintiff in and with his "PLAINTIFF'S INITIAL RULE 26 DISCLOSURES" was a three-page document, a true and correct copy of which is also attached hereto and incorporated by reference herein and separately marked as Exhibit "B".

5.    That the "PLAINTIFF'S INITIAL RULE 26 DISCLOSURES" in section II, paragraph 2 establishes that the plaintiff's allegations in paragraph 26 of the Amended Complaint involve alleged statements, actions and directions by the defendant Anderson which allegedly occurred in and prior to the month of October, 2002, and not October, 2003.

END OF REQUEST TO ADMIT FACTS.

BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS and VAN ALLEN ANDERSON, Defendants

s/Edward M. Wagner
Attorney for Defendants
Heyl, Royster, Voelker & Allen
Suite 300
102 E. Main Street
P.O. Box 129
Urbana, IL 61803-0129
217-344-0060 Phone
217-344-9295 Fax
E-mail: khill@hrva.com

**HEYLROYSTER**
**VOELKER**
**&ALLEN**

Suite 300
102 E. Main Street
P.O. Box 129
Urbana, IL 61803-0129
Fax (217) 344-9295
(217) 344-0060

2

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing instrument was served upon the attorneys of record of all parties to the above cause by **Certified Mail - Return Receipt Requested**, by enclosing the same in an envelope addressed to such attorneys at their business address as disclosed by the pleadings of record herein, with postage prepaid, and by depositing said envelope in a U.S. Post Office Box in Urbana, Illinois, on the _14_ day of January, 2006:

Mr. Nile J. Williamson
Attorney at Law
1926 Associated Bank Plaza
Peoria, IL 61602-1104

s/ Edward M. Wagner
Attorney for Defendants
Heyl, Royster, Voelker & Allen
Suite 300
102 E. Main Street
P.O. Box 129
Urbana, IL 61803-0129
217-344-0060 Phone
217-344-9295 Fax
E-mail: ewagner@hrva.com

**HEYL ROYSTER**
**VOELKER**
**&ALLEN**

Suite 300
102 E. Main Street
P.O. Box 129
Urbana, IL 61803-0129
Fax (217) 344-9295
(217) 344-0060

3

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

GEOFFREY W. BANT,                          )
                                           )
            PLAINTIFF,                     )
                                           )
      v.                                   )          CASE NO. 05-2132
                                           )
BOARD OF TRUSTEES OF THE                   )
UNIVERSITY OF ILLINOIS and                 )
VAN ALLEN ANDERSON,                        )
                                           )
            DEFENDANTS.                     )

## PLAINTIFF'S INITIAL RULE 26 DISCLOSURES

TO: KEITH B. HILL
    EDWARD M. WAGNER
    HEYL, ROYSTER, VOELKER, & ALLEN
    102 E. MAIN ST., SUITE 300
    URBANA, IL 61803-0129


I. Name, address, and telephone number of each individual likely to have discoverable information relevant to disputed facts alleged with particularity in the pleadings, identifying the subjects of the information:

1. Geoffrey W. Bant
   801 W. Pennsylvania
   Urbana, IL 68201
   (217) 344-4557

**Subject of Information:** Knowledge of the facts at issue in this case, including but not limited to his job duties and performance.

2. Kathleen Pecknold
   Former Associate Vice-Chancellor for Administration and Human Resources.
   Current Associate Provost and Director of Academic Human Resources
   601 East John Street
   Champaign, IL 61820

EXHIBIT "_A_"

BANT v. UNIVERSITY OF ILLINOIS
PAGE TWO

(217) 333-6394

**Subject of Information:** Knowledge of the facts at issue in this case, including but not limited to Bant's job duties, performance and evaluations.

3. Van Allen Anderson
   Former Associate Vice-Chancellor for Administration and Human Resources.
   Current Associate Director at the Beckman Institute for Advanced Science and Technology
   405 North Mathews Avenue
   Urbana, IL 61801
   (217) 244-8380

**Subject of Information:** Knowledge of the facts at issue in this case, including but not limited to plaintiff's job duties, performance and evaluations

4. Frances G. Carroll,
   Champaign, IL 61820

**Subject of Information:** Knowledge of the facts at issue in this case, including but not limited to the Trustees' ratification of the action of Cantor.

5. Kenneth D. Schmidt
   Champaign, IL 61820

**Subject of Information:** Knowledge of the facts at issue in this case, including but not limited to the Trustees' ratification of the action of Cantor.

6. David V. Dorris
   Champaign, IL 61820

**Subject of Information:** Knowledge of the facts at issue in this case, including but not limited to the Trustees' ratification of the action of Cantor.

7. Devon C. Bruce
   Champaign, IL 61820

**Subject of Information:** Knowledge of the facts at issue in this case, including but not limited to the Trustees' ratification of the action of Cantor.

BANT v. UNIVERSITY OF ILLINOIS
PAGE THREE

8. Niranjan S. Shah
   Champaign, IL 61820

**Subject of Information:** Knowledge of the facts at issue in this case, including but not limited to the Trustees' ratification of the action of Cantor.

9. Robert Y. Sperling
   Champaign, IL 61820

**Subject of Information:** Knowledge of the facts at issue in this case, including but not limited to the Trustees' ratification of the action of Cantor.

10. Lawrence C. Eppley
    Champaign, IL 61820

**Subject of Information:** Knowledge of the facts at issue in this case, including but not limited to the Trustees' ratification of the action of Cantor.

11. Marjorie E. Sodermann
    Champaign, IL 61820

**Subject of Information:** Knowledge of the facts at issue in this case, including but not limited to the Trustees' ratification of the action of Cantor.

12. Robert F. Vickrey
    Champaign, Il 61820

**Subject of Information:** Knowledge of the facts at issue in this case, including but not limited to the Trustees' ratification of the action of Cantor.

13. Sonya Chambers
    Former Director of Financial Affairs, Administrative Services. Current director
    of Procurement Services
    1501 S. Oak
    Champaign, Il 61820
    (217) 265-0550

BANT v. UNIVERSITY OF ILLINOIS
PAGE FOUR

14. Nancy Cantor
    Former Chancellor of the University of Illinois. Current
    Syracuse University
    Tolley Administration Building
    Syracuse, NY 13244

**Subject of Information:** Knowledge of the facts at issue in this case, including but not limited to ratification of the recommendation to terminate plaintiff.

There may be additional persons identified in defendant's response to discovery and Rule 26 Disclosures who have information concerning plaintiff's case.

II. A copy of, or description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party that are relevant to the disputed facts alleged with particularity in the pleadings.

Plaintiff's counsel has in their possession the following categories of documents that plaintiff may use to support his claims or defenses:

1. Plaintiff's summary which consists of one page dated June 10, 2005.

2. Plaintiff's notes to the Amended Complaint which consists of three pages dated July 15, 2005.

No documents are produced that we believe are already in the possession of defendant or defendant's counsel or that have been previously produced by either party.

Additionally, plaintiff may seek expert witnesses and will notify defendant of the same consistent with local rules and Federal Rules of Civil Procedure.

III. Computation of any category damages claimed by the disclosing party.

(A) Plaintiff claims damages for all back pay plus bonuses, pain, suffering and humiliation and other incentives that he would have earned but for his termination. Such

BANT v. UNIVERSITY OF ILLINOIS
PAGE FIVE

damages are ongoing and currently total approximately $125,000.00.  Additionally,

plaintiff seeks reasonable attorney's fee, which are ongoing at the time of this disclosure

and are approximately $10,000.00.  Finally, plaintiff seeks reinstatement in his former

position with full seniority retroactively applied and other benefits consistent with said

reinstatement.

BY _____
NILE J. WILLIAMSON
ATTORNEY FOR PLAINTIFF

NILE J. WILLIAMSON
ATTORNEY AT LAW
1926 ASSOCIATED BANK PLAZA
PEORIA, IL 61602
TELEPHONE: (309)677-5950

07-15-2005  12:37·   From-KINKOS                        +2173981480        T-011  P.001/002  F-634



# FedEx Kinko's.
### Office and Print Center

# Fax Cover Sheet

---

FedEx Kinko's of  Champaign-Campus .        Telephone: 217.398.0003   Fax: 217.398.1907

---

Date  7/15/05                                    Number of pages  3    (including cover page)

## To:                                          ## From:

Name  NILE WILLIAMSON                           Name  GEOFF BANT

Company _____                  Company _____

Telephone  309 - 677 - 5950                      Telephone  217 - 344 - 4557
                                                              217 - 840 - 0415
Fax  309 - 677 - 5952

---

Comments

---

More than 1,200 locations worldwide. For the location nearest you, call 1.800.2.KINKOS. Visit our website at fedexkinkos.com.

of 2003 that they began to manage the Xerox business.

Page 7.

Graph 21: CPS became the de facto copyright office for (all three University of Illinois) campuses.

Page 8.

Graph 24:  omit "the" in front of CPS.

Graph 26: October 2003 should be October 2002. Full name of the conference is Big Ten Printing and Copyright Conference.

Graph 26, Line 2: allegation(s)

Page 9.

Graph 29: Seems to end abruptly. Do you restate material in original complaint, damages etc? Or are these just amended to the pro se filing?

Comment on letter from Cantor

07-15-2005    12:41    From-KINKOS                    +21739B1480        T-012   P.002/003   F-635

Dear Mr. Williamson,

I think you have done an excellent job of summarizing the issues and especially bringing in the copyright controversy Please e-mail me or call if any of my comments below are unclear. There are only a few factual changes.

Comments on Amended Complaint

Page 3

Graph 9: I did not write to Cantor. CAP sent their recommendations and I asked my state rep to call her but I did not write.

Graph 10: Zip code is 61801. Director for 15 years.

Page 5

Graph 15: Pecknold was the only person evaluating me on annual performance reviews and her ratings were always commendable (4 out of 5) and outstanding (5 out of 5). Never average.

Page 6

Graph 16: rating of 6/20/00 (not 6/12/00) was Good/Commendable (3.5 out of 5)

Graph 17: Not hired as a business manager. That was the title I was trying to hire her as, reporting to me, but Anderson made her a Director of Financial Affairs for Administrative Services. Administrative Services included a number of units in addition to Printing Services. His appointment made her a director like the other people who reported to him. Anderson maintained she was my business manager even though she did not report to me and did not consider herself my business manager.

Graph 18: "Bant's department" (according to the University Financial Accounting System) showed a deficit (your spell check has changed deficit to deficient twice in graph 18 and once in graph 19) of $484, 782 (no space after the comma).

Graph 18: Last line, I provided my report to Anderson. I was not allowed to provide it to anyone else and I have no written or verbal confirmation from Anderson or any other offices that my report was ever sent to the office requesting the report and plan.

Graph 19: Deficit/deficient. At end of the graph… Colbert testified to the CAP group that he never told Anderson to eliminate the deficit in one year.

Graph 20: Fall of 2001 should be Spring of 2002. She was hired in October 2001 and it was not until February/March of 2002 that they began to manage the Xerox business.

Page 7.

Graph 21: CPS became the de facto copyright office for (all three University of Illinois) campuses.

Page 8.

Graph 24: omit "the" in front of CPS.

Graph 26: October 2003 should be October 2002. Full name of the conference is Big Ten Printing and Copyright Conference.

Graph 26, Line 2: allegation(s)

Page 9.

Graph 29: Seems to end abruptly. Do you restate material in original complaint, damages etc? Or are these just amended to the pro se filing?

Comment on letter from Cantor

Letter was dated January 15, 2004, after I was off the payroll. It begins "As you know..." I didn't know. Shinham never mentioned that she had reviewed my grievance and made recommendations to the Chancellor. She only said that she had been authorized to offer me a sum which she would not specify or discuss. Shinham would not talk about my grievance or reference it in any way. My attorney tried to contact her numerous times to discuss a settlement and calls were never taken or returned. My attorney then contacted legal counsel directly on January 9, 2004 and they said that they could offer no more than six months salary (About $41,000).

Ju...    ture reference Pecknold considers my one year notice period as a settlement of sorts since I continued to be pa    director salary but did not have the responsibility. I did have to work full time during that one year period so it    = a lump sum settlement upon termination.

T...    indicates that the Chancellor felt some discomfort about my case. Enough to have Shinham discuss a lump s...    lump sum would, of course, have required that I sign a hold harmless/non disclosure agreement.

Other notes

RE: Due process. I was never interviewed or contacted by Pecknold, the head of Academic Human Resources, or Colbert, Anderson's boss, regarding the charges in the letter from Anderson. By University policy both had to approve his action but they did not permit me to comment or defend myself before approving my termination.

June 10, 2005
Geoffrey Bant  217-344-4557(h) 217-840-0415 (cell),

Brief summary of my situation:

I was employed as an "at will" academic professional with the title, Director of Printing, at the University of Illinois Urbana-Champaign for 14 years (1988-2003.) I supervised about 100 civil service employees under Kathleen Pecknold, Associate Vice-Chancellor for Administration and HR. I had a great record and excellent performance reviews. I got a new boss in 1999, Van Anderson. In December 2002 he gave me notice of termination for poor performance and listed a number of issues. I appealed my termination to the campus Council of Academic Professionals (CAP), a representative body of the 3300 professional employees. They took testimony and investigated my case and, uncharacteristically, ruled heavily in my favor recommending to the Chancellor, Nancy Cantor, that I not be terminated and that my supervisor be reprimanded. The Chancellor ignored their recommendations. After a one year notice period I was terminated from payroll in January 2004. Naomi Jakobsson, my state representative, talked to the Chancellor on my behalf and just before my last day on the payroll the University offered me six months salary to sign a non-disclosure agreement. I refused.

In February 2004 I filed an Illinois Human Rights Department charge that I had been discriminated against because of my age, race and gender. Anderson had terminated me to place Sonya Chambers, a young, black, female in my position in order to secure a promotion from Cantor. Chambers told the CAP committee that after I was terminated Anderson offered her the job but she turned him down. Anderson did not get the promotion and he was transferred shortly after I was given notice. My case was passed to the EEOC after a hearing with the Illinois Human Rights Department and I received my dismissal and notice of rights in February 2005. I requested a copy of the EEOC file. The University response to my charge was that they had not replaced me with Sonya Chambers but with an older black male, Bob Kelly, on an interim basis and then with an old white male Kip Mecum on a permanent basis. Recently Mecum was transferred and the department is now run by two younger white women, one of whom was my former assistant. I filed suite in Federal Court at Urbana, "pro se" on Friday, June 3, to meet the 90 day deadline.

I have been working with an attorney, Catherine Barbercheck in Champaign. She is not an employment attorney and made efforts to find an employment attorney for me as I approached the Federal Court level. She contacted Mary Lee Leahy in Springfield who had handled another case against Anderson in the mid 90s for the same reasons. The UI settled with her client. Leahy reviewed the case and decided she did not want to handle it. The University had responded to the EEOC by saying that the person in question did not get my job so there was no discrimination and she felt it would be hard to prove intent. Most of the legal firms in Champaign-Urbana do subcontract work for the University so it is difficult to find representation for an employment case against the University. I now am trying to find representation outside of Champaign-Urbana.

My case also involves issues of whistle blowing and slander. I filed a charge with the campus ethics office alleging whistle blowing as I had been criticized by Anderson for drawing attention to violations of federal copyright laws and other issues. The University dismissed my charges. I took no further actions at the time.

The CAP report alluded to communications by Anderson to his superiors of which I had no knowledge suggesting criminal activity on my part. This was not cited in my termination notice but it is my opinion, and that of CAP, that these slanderous allegations were used as a way to obtain the approvals Anderson needed to terminate me without question. It is, I believe, the reason the Chancellor did not even comment on the CAP recommendations. I know that whistle blowing and slander are difficult to prove and that time limits have probably expired for both. I think the issues involved could, however, add pressure and help my discrimination case against the University.

I am very determined but am also very realistic about the possible outcomes of this case. My major concern is that my reputation has been smeared by allegations of criminal behavior in order to discriminate against me. I am an ethical, honest, hard working person and now many people think I committed a crime and was terminated for that reason. I would like my reputation to be repaired and I want a settlement to compensate me for loss of income, the costs incurred with early retirement, and the damage to my life.

After I was terminated I did an extensive job search and could not find comparable employment. I now teach at the Champaign Park District half time. I turned 55 in 2003 and was able to retire with health benefits from the State University Retirement System. I had to take a lower payout and had to borrow money to purchase previous years of service time while employed at Illini Media Company where I worked from 1974 until 1988. Illini Media is an Allied Agency of the University and produces the student newspaper and other student media. I am married with two sons 17 and 24. My wife and I worked and went to school with Shelly Epstein at Northern Illinois University and have stayed in touch over the years. He recommended you to me.

07-15-2005  12:37  From-KINKOS                          +2173981480          T-011  P.001/002  F-634



**fedEx Kinko's.**
Office and Print Center

| Fax Cover Sheet

FedEx Kinko's of Champaign-Campus        Telephone: 217.398.0003   Fax: 217.398.1907

Date __7/15/05__                          Number of pages __3__ (including cover page)

## To:

Name __NICK WILLIAMSON__

Company _____

Telephone __309 - 677 - 5950__

Fax __309 - 677 - 5952__

## From:

Name __GEOFF BANT__

Company _____

Telephone __217 - 344 - 4557__
            __217 - 840 - 0415__

Comments

More than 1,200 locations worldwide. For the location nearest you, call 1.800.2.KINKOS. Visit our website at fedexkinkos.com.

of 2002 that they began to manage the Xerox business.

Page 7.

Graph 21: CPS became the de facto copyright office for (all three University of Illinois) campuses.

Page 8.

Graph 24:  omit "the" in front of CPS.

Graph 26: October 2003 should be October 2002. Full name of the conference is Big Ten Printing and Copyright Conference.

Graph 26, Line 2: allegation(s)

Page 9.

Graph 29: Seems to end abruptly. Do you restate material in original complaint, damages etc? Or are these just amended to the pro se filing?

Comment on letter from Cantor

EXHIBIT "_β_"

07-15-2005   12:41   From-KINKOS                    +2173981480          T-012   P.002/003   F-635

Dear Mr. Williamson,

I think you have done an excellent job of summarizing the issues and especially bringing in the copyright controversy. Please e-mail me or call if any of my comments below are unclear. There are only a few factual changes.

Comments on Amended Complaint

Page 3

Graph 9: I did not write to Cantor. CAP sent their recommendations and I asked my state rep to call her but I did not write.

Graph 10: Zip code is 61801. Director for 15 years.

Page 5

Graph 15: Pecknold was the only person evaluating me on annual performance reviews and her ratings were always commendable (4 out of 5) and outstanding (5 out of 5). Never average.

Page 6

Graph 16: rating of 6/20/00 (not 6/12/00) was Good/Commendable (3.5 out of 5)

Graph 17: Not hired as a business manager. That was the title I was trying to hire her as, reporting to me, but Anderson made her a Director of Financial Affairs for Administrative Services. Administrative Services included a number of units in addition to Printing Services. His appointment made her a director like the other people who reported to him. Anderson maintained she was my business manager even though she did not report to me and did not consider herself my business manager.

Graph 18: "Bant's department" (according to the University Financial Accounting System) showed a deficit (your spell check has changed deficit to deficient twice in graph 18 and once in graph 19) of $484,782 (no space after the comma).

Graph 18: Last line, I provided my report to Anderson. I was not allowed to provide it to anyone else and I have no written or verbal confirmation from Anderson or any other offices that my report was ever sent to the office requesting the report and plan.

Graph 19: Deficit/deficient. At end of the graph... Colbert testified to the CAP group that he never told Anderson to eliminate the deficit in one year.

Graph 20: Fall of 2001 should be Spring of 2002. She was hired in October 2001 and it was not until February/March of 2002 that they began to manage the Xerox business.

Page 7.

Graph 21: CPS became the de facto copyright office for (all three University of Illinois) campuses.

Page 8.

Graph 24: omit "the" in front of CPS.

Graph 26: October 2003 should be October 2002. Full name of the conference is Big Ten Printing and Copyright Conference.

Graph 26, Line 2: allegation(s)

Page 9.

Graph 29: Seems to end abruptly. Do you restate material in original complaint, damages etc? Or are these just amended to the pro se filing?

Comment on letter from Cantor

07-15-2005   12:41    From-KINKOS                                    +2173981480              T-012   P.003/003   F-635

Letter was dated January 15, 2004, after I was off the payroll. It begins "As you know,..." I didn't know. Shinham never mentioned that she had reviewed my grievance and made recommendations to the Chancellor. She only said that she had been authorized to offer me a sum which she would not specify or discuss. Shinham would not talk about my grievance or reference it in any way. My attorney tried to contact her numerous times to discuss a settlement and calls were never taken or returned. My attorney then contacted legal counsel directly on January 9, 2004 and they said that they could offer no more than six months salary (About $41,000).

Ju.  ∵    ure reference Pecknold considers my one year notice period as a settlement of sorts since I continued to be
pa         director salary but did not have the responsibility. I did have to work full time during that one year period so
it .       ≠ a lump sum settlement upon termination.

Ti..       indicates that the Chancellor felt some discomfort about my case. Enough to have Shinham discuss a lump
s∺ .       lump sum would, of course, have required that I sign a hold harmless/non disclosure agreement.

Other notes

RE: Due process. I was never interviewed or contacted by Pecknold, the head of Academic Human Resources, or Colbert, Anderson's boss, regarding the charges in the letter from Anderson. By University policy both had to approve his action but they did not permit me to comment or defend myself before approving my termination.